(January 28, 1902.)

## BRANSTETTER v. WILLIAMS.
### [67 Pac. 800.]

PLEADINGS—VARIANCE—MISTAKE.—Where the complaint alleged prior appropriation of water by plaintiffs, fixing the time of such appropriation in 1862, and also alleged, on information and belief, appropriation of water from the same stream by the defendants, fixing their time of location in 1863, and the latter date is admitted by the answer, and the proof and findings show and establish that the plaintiffs established a right to date from June, 1864, and the defendant from 1865, there is no error.

(Syllabus by the court.)

APPEAL from District Court, Boise County.

George Ainslie and W. E. Borah, for Appellants.

"The judgment is against law, because it is against the admissions of the pleadings." (*Traverso v. Tate,* 82 Cal. 170, 22 Pac. 1082; *White v. Douglas,* 71 Cal. 115, 11 Pac. 860.) The following authorities will be found to support the principle that findings contrary to or outside of the admitted facts in the pleadings cannot stand and that it is error to so find: *Reinhart v. Lugo,* 75 Cal. 639, 18 Pac. 112; *Gregory v. Nelson,* 41 Cal. 278; *Silvy v. Neary,* 59 Cal. 97; *Tracy v. Craig,* 55 Cal. 91; *Bradbury v. Cronise,* 46 Cal. 287; *McDonald v. Association,* 51 Cal. 210; 8 Ency. of Pl. & Pr. 945.

Hawley & Puckett and Karl Paine, for Respondents.

The plaintiffs and their predecessors in interest have used the waters of Elk creek claimed by them adversely to the defendants and their grantors, for ten years under the finding of the court; and the defendants and their grantors recognize the right. It has been held in California, under the statute identical with our statute, that an adverse possession and user of water for five years continuously and uninterruptedly, with the knowledge of and to the injury of the true owner, will bar his right thereto. (*Union Water Co. v. Crary,* 25 Cal. 509, 85 Am. Dec. 145; *Davis v. Gale,* 32 Cal. 35, 91 Am. Dec. 554; *Evans v. Ross* (Cal.), 8 Pac. 88; *Cox v. Clough,* 70 Cal. 345, 11 Pac. 732; *Gallaher v. Montecito Valley Water Co.,* 101 Cal. 242, 35 Pac. 770; Works on Irrigation, 49.)

STOCKSLAGER, J.—This case is here on appeal from a judgment and an order overruling a motion for a new trial by the district court of Boise county. The action involves the prior right to the use of the waters of Elk creek, in said Boise county. All parties to the action claim the right to the use of the waters for mining purposes only; plaintiffs alleging that their appropriation, through their predecessors, dates from November, 1862, and in the winter of 1862 and spring of 1863 a ditch was constructed of sufficient capacity, and known as the "Carmody Ditch," to carry three hundred inches of water under a six-inch pressure; that continuously since the spring of 1863, during the mining season of each year, the plaintiffs and their predecessors in interest have used the waters appropriated as aforesaid. Allege that on the eleventh day of July, 1898, defendants, without permission of plaintiffs, or any of them, and without right so to do, turned all of the waters of said creek flowing at the point of their diversion into their ditch, known as the "Channell Ditch," and thereby deprived plaintiffs of the use of said waters, and have ever since continued to deprive plaintiffs of the use of said waters. Then follows a prayer for a decree declaring them to be entitled to the prior use of three hundred inches of the waters of said stream; that defendants be enjoined and restrained from interfering with such use, etc.

Defendants in their answer deny the appropriation as alleged in 1862, and deny that at any time prior to 1870 the plaintiffs or their predecessors constructed a ditch of any kind, and aver that the ditch described in plaintiffs' complaint was not constructed until the year 1870, and was at said time of the capacity to carry one hundred inches, measured under a four-inch pressure. Admit that on the eleventh day of July, 1898, and for a long time "thereafter" (evidently meaning "theretofore"), they were using the waters of Elk creek through said Channell ditch, as alleged, etc. Aver that on the twenty-eighth day of December, 1863, defendants' predecessors in interest located and appropriated five hundred inches, measured under a four-inch pressure, of the water of the certain stream known as "Elk Creek," for placer mining purposes, and immediately thereafter, in the year 1864, constructed a ditch of sufficient capacity to carry five hundred inches of water as aforesaid, and did actually divert said amount of water for such purposes, and have continuously each year during the mining season used such amount of water from said creek for placer mining purposes. Aver that defendants and their predecessors in interest have for more than five years prior to the commencement of this suit, continuously, openly, notoriously, peaceably, uninterruptedly, and adversely to all other parties, used the water of Elk creek through their said ditch to the amount of five hundred inches, and have during all of said times been in open, continuous, notorious, peaceable, and uninterrupted and adverse possession of said ditch and the waters of said Elk creek, to the amount of five hundred inches. During the progress of the trial the plaintiffs asked leave to amend their pleading by inserting the following in paragraph 7, immediately following the figures "1863": "But said right was abandoned by nonuser prior to 1876, and the right of the defendants to the use of the waters of said Elk creek dates from said year 1876."

Upon these pleadings and the evidence introduced, the court found: That in the month of June, 1864, the grantors and predecessors in interest of the plaintiffs appropriated one hundred and fifty inches of water measured under a four-inch pressure, of the flow of the waters of Elk creek, and constructed

a ditch of sufficient capacity to carry said water; said ditch being commonly known as the "Carmody Ditch." That since said time the plaintiffs and their predecessors in interest have continuously used said amount of water during the mining season. That in the year 1865 the grantors and predecessors in interest of the defendants appropriated two hundred and fifty inches of the flow of the waters of said Elk creek at a point about six miles from said Carmody ditch, belonging to plaintiffs, and did in said year construct a ditch generally and commonly known as the "Channell Ditch" from said point of appropriation along and upon the westerly side of Elk creek, and over the dividing ridge between Elk creek and Grimes creek; the head of said ditch and the point of diversion of said water appropriated as aforesaid being at a point about six miles above the head of said Carmody ditch, belonging to plaintiffs, and said ditch being of sufficient size, grade, and carrying capacity to carry and conduct said amount of water so appropriated. That the waters flowing in Elk creek from and after the month of June of each year are not sufficient in amount to supply the aforesaid ditches of the parties hereto with the amounts of water appropriated and claimed by them.

Defendants specify the following alleged errors: Insufficiency of the evidence to justify the decision of the court, specifying the following particulars in which the evidence is insufficient to justify the said decision: 1. That all the evidence and the pleadings show that the appropriation of the plaintiffs for their ditch and water right dates from not earlier than January 14, 1865, and that there is no evidence showing or tending to show use or appropriation of the waters of Elk creek through the plaintiffs' said ditch and water right, or by the predecessors in interest of the plaintiffs, prior to, or of an earlier date than, January 14, 1865, and that there is no evidence showing an appropriation by the predecessors in interest of the plaintiffs of the date of June 4, 1864, as found by the court. 2. That all the evidence and the pleadings show that the appropriation and right of the defendant to the waters of Elk creek date from December 28, 1863, and that it is prior in time and superior in right to that of plaintiffs, whereas the court finds that the

defendants' rights and appropriations dated from the year 1865, and are subsequent in time and right to the plaintiffs'. 3. That there is no evidence showing or tending to show that the plaintiffs or their predeccssors in interest appropriated any of the waters of Elk creek prior to January, 1865. 4. That there is no evidence showing that the defendants or their grantors or predecessors in interest were ever requested by the plaintiffs or their predecessors in interest to turn out the waters of Elk creek from their said ditch, and there is no evidence showing that the defendants did from 1876 to 1896, during low-water season, or at any time, turn out from their ditch the waters of Elk creek for the plaintiffs' ditch and water right, or that the defendants or their predecessors in interest ever acknowledged the superior right of the plaintiffs.

Charles Mann, called as a witness in behalf of plaintiffs, testified: Has resided in Idaho City since 1876. "George. Hanson is my partner. When I purchased the ditch it was called the 'Hanson Ditch.' Purchased from Lauer and Swinn. The other plaintiff is the Buena Vesta Ditch Company. My partner and the other plaintiff have never used the water in common. Divided the water under certain conditions. This ditch takes water from Elk creek. Taps Elk creek about four miles from Eldorado gulch, and about one-fourth mile above the junction of Forest King gulch with Elk creek. After this ditch reaches Eldorado gulch it runs from there into what I call the 'Eldorado Ditch,' onto Gold Hill. That is, running to the Gold Hill, both ditches connect in Eldorado gulch. That ditch is not really a continuation of the other. They connect. Have been over the ground from Eldorado gulch and head of the ditch on Elk creek very often. There is no other ditch, nor any evidence of any other ditch, except the Hanson ditch, there. I don't think there was any other ditch ever taken from Elk creek, crossing Eldorado gulch. Was not familiar with that ditch before I bought it. Since buying it, we have used the water right here on Gold Hill ever since. Water generally fails in June in Elk creek. Know ditch known as 'Channell Ditch,' sometimes called the 'Summit Ditch,' owned by defendants in this action. When I

bought in the Hanson ditch Mr. Channell was owner of the
Channell ditch. I never, in succeeding years, had any disputes
with Mr. Channell. In after years the habit and custom was
that when we asked for water he turned out when we needed it,
and the water became low. This turning out continued nearly
up to the time Mr. Channell sold out, three or four years ago.
Mr. Channell never refused to turn out during this time.
Mr. Kallenbrun has been ditch tender for us for about twenty-
five years—I think, since 1876; practically all the time since
I owned the ditch. And the matter of turning out has been
left to him." On cross-examination, testified: "I had nothing
to do, personally, with requesting Mr. Channell to turn off
the water. It was always left to the ditch tender. When the
water came, I generally knew it. I was using the water.
Had no conversation with Mr. Channell, that I remember of,
about turning off the water. I simply knew that the requests
were made, and that the water came. Mr. Kallenbrun has
been constantly in my employ since he went there, except for
a time the first year. Has had charge of the ditch and at-
tended to getting the water down to and through the ditch. I
never measured the capacity of the ditch. Simply made a
general estimate. What I call the 'Eldorado Ditch' comes from
Eldorado gulch and runs to Gold Hill. I have never known
the Hanson ditch by the name of the 'Eldorado Ditch.' The
Eldorado ditch did not take water out of Elk creek. This
Hanson or Carmody ditch connects now what I knew as the
'Eldorado Ditch.' It is not the same ditch in the original
construction with the Eldorado ditch. I own the Eldorado
ditch. Got title from Lauer and Swinn at the same time. We
never turned out water for any other ditch. Generally turn
out for the Dunn ditch." ·

G. T. Keys testified on behalf of plaintiffs: "Resided in
Idaho City since 1864, working in the mines and looking after
ditches. Years ago I was familiar with the ditches taking
water from Elk creek. I never had anything to do on those
ditches until 1865. I know where the Channell ditch is lo-
cated. I have been on it frequently. This ditch taps the
north fork of Elk creek. The termination of this Channell

ditch was Deer creek, in early days. There was another ditch tapping Elk creek called the 'Eldorado Ditch,' between the Cuddy and the Alderson ditch. I don't know when that ditch was built. It was on the south side of Elk creek. There was no ditch on the north side of Elk creek at that time, except the Channell ditch and the company's two ditches. I was on the Channell ditch in 1864. There was some men building it at that time. I think it was in July I was on the ditch below what is called the 'Elkhorn Mine.' They were working on it. There was not any water in the ditch when I was there. They were constructing the ditch. George W. Miller was at work on the ditch. Was well acquainted with him afterward. Told me afterward he was interested in the ditch. He was working there at the time. I know a ditch running fom Elk creek to Eldorado gulch. It was called the 'Eldorado Ditch' at that time. In the early days it was called the 'Eldorado Ditch.' I never heard of its being called the 'Carmody Ditch' until now. Some of those ditches held their original names, and some did not. There was no other ditch, except this Hanson ditch now owned by plaintiffs, conveying water from Elk creek to Eldorado gulch. I was familiar with this country from '65 until the '70's. I don't think there was any other ditch conveying water from Elk creek to Eldorado gulch during that time. I think I would have known it if there had been. I feel satisfied on that point. The Eldorado ditch, now called the 'Hanson Ditch,' would carry probably one hundred and fifty inches when I first saw it, in June, 1864. The Eldorado ditch was full of water when I first saw it, in 1864. The water was being used for mining purposes in Eldorado gulch. I have not been on that ditch for seventeen years. The Eldorado ditch, or Hanson ditch, was enlarged by Mann and Hanson and Buena Vesta Company in '75 or '79. They enlarged the ditch to use water on the Hanson claim. I think the original ditch would carry one hundred and fifty inches. After Mr. Channell bought the Alderson, and was an owner with the company, several times I notified him that we needed water, and he would turn out to the Alderson ditch. I notified him once for the Dunn ditch. I went to Mr. Kallenbrun, the ditch tender for

Hanson ditch, and they turned the water out. I think the Channell ditch was turned out first. I disremember which one was first. After that it never came around that we had to notify them any more. That is, the Eldorado ditch. In the ordinary season the low water commences about July 1st to the 10th." On cross-examination testified: "First knew the Channell ditch in '64. Saw it at a point this side of the quartz-mill about two and a half miles from the head of the ditch where it taps up to Elk creek. Was up at the head of the ditch once. When I saw it in '64 they had constructed from Elk creek down to the point where I saw it. That was in July, '64, I think. I did not see any water flowing in the ditch at that time. I don't know whether they turned any water that year or not. I measured the water in the Channell ditch the next year (1865), in the latter part of July. I think there was about two hundred and forty inches or two hundred and fifty inches. I think two hundred and fifty inches I measured at the head gate. I measured it also at the lower part of Deer creek. I found it about seventy-five inches short. I first went upon what is called the 'Eldorado Ditch' in June, 1864. It would carry about one hundred and fifty inches. Saw it again in '65. There was no change. That continued to be its capacity until about '75 or '76. I never knew the Channell ditch to turn off specifically for the Eldorado ditch. I knew of the Channell ditch turning off for the Alderson ditch. I was working for the Buena Vesta Company. Their two ditches—the Dunn ditch and the Cuddy ditch—had prior rights, as I understood it. The Alderson ditch and the Cuddy ditch would make the Channell ditch turn off for them. He turned off before Mann and Hanson turned out on the Eldorado this year I mentioned." Plaintiffs introduced the following notice:

"Elk Creek, Dec. 28th, 1863.

"Notice is hereby given that the undersigned has this day taken up and claimed all the surplus or available water in Elk creek and tributaries, Deer creek included, for mining and milling purposes. Said water to be taken out of Elk creek about four miles above the head of Eldorado ditch, and to be known by the name of 'Deer Creek District Ditch.'

"G. W. MILLER.

"Filed and recorded January 1, 1864, at 10 o'clock A. M."

Witness continued: "I do not know who constructed the Eldorado ditch. It was constructed before I came to the country. I never saw any notice posted at the head of the ditch."

Paul Kallenbrun, on behalf of plaintiffs, testified: "I am acquainted with Elk creek, and ditches taking water from Elk creek. There is about six or seven ditches. First became familiar with Elk creek and its waters in spring of 1878. I went to the Eldorado ditch. Have been tending ditches for Mann and Hanson on the ditch running from Elk creek to Eldorado gulch. Have always known the ditch as the 'Hanson Ditch.' I never knew it to be called the 'Carmody Ditch' until two years ago. There were two years Mann did not work the diggings. The wind blew the flume down, and he did not fix it up for a couple of years. I think it was '85 or '86. As to the custom of turning out water when it became low for the first two or three years, the ditch tenders of the Alderson ditch used to come down and tell me to turn out, and I turned out, but in 1882 those ditches were abandoned—the Alderson ditch and the Cuddy ditch. After that, whenever the water got short on me in the Hanson ditch, I told the owners of the property it was getting short, and they notified the company. I never had anything to do with the turning out between the Hanson ditch and the Channell ditch but once. That was three years ago, or four—when Smith and Williams bought the property. I was sent over there prior to that time, and, when Channell used the ditch, we turned out pretty much all of us together. It might have run through the Hanson ditch three or four days longer than through the Channell ditch. I never had any talk personally with them, except this one time, in regard to turning out. This was three years ago, when Williams bought the property. I told him I was sent there by Mr. Mann for him to turn the water out, so we could clean up the sluices. I believe they did two or three days." On cross-examination, testified: "I never, except this one time that I have spoken of, knew of the Channell ditch turning out specifically for the Hanson ditch. That was the only time, and I had been there twenty-two years. I never requested them to turn

out but this one time, and that was to give me an opportunity to clean up. They turned out about two days, I believe, after I requested them. They told me they would be able to turn out and enable me to clean up in two days. They wanted to clean up themselves, and after they cleaned up they would turn out for us."

James F. Frainor testified: "Have been attending the ditches on Elk creek for about twenty-five or thirty years, altogether. First came to Elk creek and went to work on the ditches in 1866. First knew Elk creek in 1863. The Channell ditch was dug in 1864 by George W. Miller, one of the parties interested in it. I saw fifteen or twenty men working on it in August, 1864. There had been no water turned in at that time. First saw the Hanson or Carmody ditch in the early spring of 1863. It was known by the name of the 'Carmody Ditch.' As to when the water was first run in the Channell ditch, I would not be positive; but I was on Deer creek in October, '64, and there was muddy water going down through Deer creek. I think it was running through that ditch then. In 1863 they were running water in the Carmody ditch and working claims in Eldorado gulch. I first began to make it my business of attending ditches in 1866. As to the custom of turning out water from these ditches, when I wanted water I went to the first ditch I came to, and took it, and then the water went to the other parties that had a right to get it from them. I don't know how they arranged between the Carmody ditch and the Channell ditch. All I know is that Smith and Williams turned out for Charlie Mann once. I went to Mr. Williams and asked them to turn out and he refused to do it. I know that the Channell ditch turned out for Mann and Hanson. I don't know how many times, but I know they turned out." Testified on cross-examination: "Never attended the Carmody ditch as a ditch tender. Never requested Channell or anyone else to turn off for that ditch. Was never present when anyone else requested it. Have no personal knowledge about it."

We have endeavored to incorporate into this opinion all the

pleadings, evidence and findings of the court that will throw any light on the issues involved in this appeal.

Counsel for appellants insist that, under the pleadings in this case, the right to the use of the water of Elk creek to the capacity of the Channell ditch, as shown by the evidence, should have been decreed to appellants, dated from the time alleged in plaintiffs' complaint, and admitted in the answer, to wit, December, 1863. It is true that plaintiffs allege on information and belief that the Channell ditch was constructed in 1864, and the water right connected therewith dates from the month of December, 1863; and this is admitted by the answer. It is also true that plaintiffs allege a prior appropriation of the waters of Elk creek, dating the appropriation the —— day of November, 1862, and in the winter and spring of 1862-63 constructed a ditch of sufficient capacity to carry three hundred inches of water from Elk creek to the place of intended use, etc. It is shown by the two allegations in the complaint that plaintiffs allege a prior right to the use of such water, and ask that it be so decreed by the court. The lower court, after hearing the evidence, decreed to the plaintiffs one hundred and fifty inches of water, measured under a four-inch pressure, and fixed the date of such appropiation on the —— day of June, 1864, and decreed to the defendants the right to use two hundred and fifty inches of the water of said stream, and dated their appropriation from the year 1865. The establishment of the right to use of water in this state is a matter of proof—of course, based upon the allegations of the complaint and the answer; but we do not understand that the court is to follow anything but the proofs consistent with the pleadings. If the lower court should attempt to fix a time of the appropriation prior to that alleged in the complaint or answer, then a different proposition would be presented. It will be observed that the court fixed the appropriation of both plaintiffs and defendants at a time later than claimed by each of the parties to the suit, and it becomes important to us to ascertain from the evidence whether these findings are supported by the evidence. An inspection of the location notice filed by G. W. Miller (and upon the right secured thereby

the defendants base their title) discloses that he knew the Carmody ditch was in existence, as he referred to it in his notice. It is shown that the Carmody ditch was constructed or in existence in 1863, but the first time it is shown that water was flowing in that ditch was in June, 1864. It is evident that it was upon this evidence that the trial court fixed the appropriation of the plaintiffs in that month upon the theory that the actual diversion of water was necessary to complete the appropriation, and that such appropriation should date from the time of actual diversion. The lower court followed the same rule with reference to the rights of the defendants.

The evidence discloses that a number of men were at work on the Channel ditch in August, 1864, but no witness testified to having seen water flowing in said ditch until some time in 1865. It is urged by counsel for appellants that the claim of title introduced by the plaintiffs discloses that the first, upon which the plaintiffs' title rests, was from John Kennedy and Nathan Kennedy, and dated January 5, 1865. This contention is supported by the record, but, in our view of the case, it is not a material matter; and, even though the right of plaintiffs should be established at that time, it would not aid the defendants, as their right would date from a later period in the year 1865.

Finding no reversible error in the record, the judgment of the lower court is affirmed, with costs to respondents.

Quarles, C. J., and Sullivan, J., concur.